## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **FAIRVUE CLUB PROPERTIES, LLC** | ) | **Case No. 309-13807** |
| **FOXLAND CLUB PROPERTIES, LLC** | ) | **Case No. 310-03566** |
| **FOXLAND HARBOR MARINA, LLC** | ) | **Case No. 309-14911** |
| **BLUERIDGE VENTURE, INC.,** | ) | **Case No. 310-03568** |
| | ) | **Chapter 11** |
| **Debtors** | ) | **Judge Paine** |

## DISCLOSURE STATEMENT FOR DEBTORS'
## JOINT PLAN OF REORGANIZATION
## DATED APRIL 30, 2010

### I. INTRODUCTION

This Disclosure Statement is submitted by Fairvue Club Properties, LLC ("Fairvue"), Foxland Club Properties, LLC ("Foxland") Foxland Harbor Marina, LLC ("Foxland Marina") and Blueridge Venture, Inc. ("Blueridge", collectively the "Debtors") for the benefit of all creditors and parties in interest (hereinafter referred to as "Claimants") in the above Chapter 11 cases, in order to inform Claimants of the terms of the Debtors' Plan of Reorganization (the "Plan") dated April 30, 2010, and to enable Claimants to make an informed decision in exercising their rights under the Bankruptcy Code to either accept or reject the Plan.

The Bankruptcy Court has conducted a hearing as required by 11 U.S.C. § 1125 on the question of whether the Disclosure Statement contains adequate information to enable Claimants to make an informed judgment about the Plan. The Court has entered an Order approving the Disclosure Statement and authorizing distribution of a copy of this Disclosure Statement and Plan to all creditors and equity security holders. The Court's approval of the Disclosure Statement does not constitute an endorsement or recommendation by the Court of the substantive provisions of the Plan but is merely an approval of the adequacy of the information contained within this Disclosure Statement.

NO REPRESENTATIONS CONCERNING THE DEBTORS OR THE PLAN, OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT, ARE AUTHORIZED. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR VOTE WHICH ARE OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION TO APPROVE THE DEBTORS' PLAN. ANY SUCH ADDITIONAL REPRESENTATIONS OR INDUCEMENTS SHOULD BE REPORTED TO THE DEBTORS OR THEIR COUNSEL IMMEDIATELY.

The information contained in this Disclosure Statement has been derived from information known to the Debtors. This information is believed to be reliable, but has not been

independently verified and has not been subjected to a certified audit. Every reasonable effort has been made to present accurate information, however, the accuracy of the information contained herein cannot be guaranteed.

The Plan contains definitions of certain terms. Where those terms are used in this Disclosure Statement with initial capital letters, they have the meanings set forth in the Plan.

## II. BACKGROUND

The history of each Debtor is as follows:

### A. Fairvue Club Properties, LLC

Fairvue is a Tennessee limited liability company. Its Articles of Organization were filed with the Secretary of State of the State of Tennessee on June 25, 2009.

Fairvue was formed to acquire certain assets used in the operation of the private country club in Gallatin, Tennessee known as "The Club at Fairvue Plantation" (the "Fairvue Club"). Fairvue closed the acquisition of such assets on July 31, 2009 and has been operating the Fairvue Club since the closing date.

The acquired assets consist of the following:

(1)     Certain real property and the improvements constructed thereon located in Gallatin, Tennessee, constituting the 18 hole golf course known as the "Fairvue Lakes Course" and the practice facility and maintenance building adjacent to such 18 hole golf course, the clubhouse and the swimming facilities (the "Fairvue Clubhouse"); and

(2)     All tangible personal property, including golf carts, lawnmowers and landscaping tools and similar items, used in the operation of the Fairvue Club and located on the real property described in paragraph (1) above; and

(3)     All merchandise and inventory used or held for use in the operation of the Fairvue Club and located on the real property described in paragraph (1) above; and

(4)     All membership agreements with members of the Fairvue Club; and

(5)     To the extent assignable, all operating agreements relating to the operation of the Fairvue Club; and

(6)     All intangible personal property used in the operation of the Fairvue Club including all rights to the name "The Club at Fairvue Plantation"; and

(7)     To the extent assignable, all governmental licenses, permits and approvals related to the operation of the Fairvue Club; and

(8)     All vehicles used in the operation of the Fairvue Club.

Fairvue did not acquire and does not own the 18 hole golf course known as the "Foxland Course" and related facilities which were previously operated as part of the Fairvue Club. Fairvue was engaged to manage the Foxland golf course and as compensation for such agreement to manage the Foxland golf course, plus an annual payment by Fairvue of $200,000 (payable $10,000 per month for the months of January, February, March and December and $20,000 per month for the months of April through November), the owner of the Foxland golf course agreed to allow members of the Fairvue Club and their guests to play the Foxland golf course.

The Fairvue Club assets were acquired by Fairvue for a total purchase price of $12,312,849.75. Fairvue received a credit for the entire purchase price since the assets were transferred subject to debt secured by such assets in the amount of $14,593,726.29. The seller agreed to indemnify Fairvue with respect to the portion of such secured debt in excess of the purchase price. The Fairvue Club assets were also acquired subject to 2008 and 2009 real property taxes. The seller agreed to pay 2008 taxes and the prorata portion of 2009 taxes through the closing date.

The sole member of Fairvue is Linda N. Moore and L. Paige Collier as Co-Trustees of The Leon Moore 2009 Irrevocable Trust.

## B. Foxland Club Properties, LLC

Foxland is a Tennessee limited liability company. Its Articles of Organization were filed with the Secretary of State of the State of Tennessee on June 25, 2009.

Foxland was formed to acquire the private 18 hole golf course and related facilities located in Gallatin, Tennessee, which was previously operated as the "Foxland Course" at the private country club known as "The Club at Fairvue Plantation" (the "Foxland Course"). Foxland closed the acquisition of such assets on September 30, 2009, and, except for the temporary closing during the winter months, has been operating the Foxland Course since the closing date.

The acquired assets consist of the following:

(1) Certain real property and the improvements constructed thereon located in Gallatin, Tennessee, constituting the 18 hole golf course known as the "Foxland Course", including the existing Foxland mansion building (the "Foxland Clubhouse") and a temporary golf pro shop constructed as an addition to such building, a restaurant building with restrooms between the green for golf hole 10 and the tee boxes for golf hole 16, golf practice facilities (driving range and putting green), a golf maintenance building and restrooms between golf holes 5 and 6; and

(2) All tangible personal property, including golf carts, lawnmowers and landscaping tools and similar items, used in the operation of the Foxland Course and located on the real property described in paragraph (1) above; and

(3)     All merchandise and inventory used or held for use in the operation of the Foxland Course and located on the real property described in paragraph (1) above; and

(4)     To the extent assignable, all operating agreements relating to the operation of the Foxland Course; and

(5)     All intangible personal property used in the operation of the Foxland Course; and

(6)     To the extent assignable, all governmental licenses, permits and approvals related to the operation of the Foxland Course.

Fairvue was engaged to manage the Foxland Course and as compensation for such agreement to manage the Foxland Course, plus an annual payment to Foxland of $200,000 (payable $10,000 per month for the months of January, February, March and December and $20,000 per month for the months of April through November), members of the Fairvue Club and their guests are allowed to play the Foxland Course.

The Foxland Course assets were acquired for a total purchase price of $8,048,545.29.  Foxland received a credit for the entire purchase price since the assets were transferred subject to debt secured, or to be secured, by such assets in the amount of $15,148,542.17.  The seller agreed to indemnify Foxland with respect to the portion of such secured debt in excess of the purchase price.  The Foxland Course assets were also acquired subject to 2008 and 2009 real property taxes.  The seller agreed to pay 2008 taxes and the prorata portion of 2009 taxes through the closing date.

The sole member of Foxland is Linda N. Moore and L. Paige Collier as Co-Trustees of The Leon Moore 2009 Irrevocable Trust.

### C. Foxland Harbor Marina, LLC

Foxland Marina is a Tennessee limited liability company.   Its Articles of Organization were filed with the Secretary of State of the State of Tennessee on April 25, 2008.

Foxland Marina was formed to develop, own and operate a marina and related facilities on Old Hickory Lake in Gallatin, Sumner County, Tennessee.  On August 31, 2009, Foxland Marina closed the acquisition of approximately 2.28 acres of real property on Old Hickory Lake near the intersection of Douglas Bend Road and Nashville Pike (U.S. Highway 31E) in Gallatin, Sumner County, Tennessee (the "Real Property").  Foxland Marina has also submitted an application to lease certain property adjacent to the Real Property (and including a portion of Old Hickory Lake) from the United States Army Corps of Engineers for the operation of a marina and related facilities.

The Real Property was acquired by Foxland Marina for a total price of $1,041,126.31.  Foxland Marina received a credit for the entire purchase price since the Real Property was transferred subject to debt secured by the Real Property in the amount of $8,099,910.29.  The seller agreed to indemnify Foxland Marina with respect to the portion of

such secured debt in excess of the purchase price. The Real Property was also acquired subject to 2008 and 2009 real property taxes. The seller agreed to pay 2008 taxes and the prorata portion of 2009 taxes through the closing date.

The sole member of Foxland Marina is Linda N. Moore and L. Paige Collier as Co-Trustees of The Leon Moore 2009 Irrevocable Trust.

### D. Blueridge Venture, Inc.

Blueridge is a Tennessee corporation. Its Charter was filed with the Secretary of State of the State of Tennessee on December 28, 1992.

Blueridge was formed to acquire, develop, own and sell real estate. The only real property currently owned by Blueridge consists of two lots in the "Foxland" development in Gallatin, Tennessee. These lots were pledged by Blueridge Venture to secure certain indebtedness of ShoLodge, Inc. to Wilson Bank & Trust, such indebtedness also being secured by the 18 hole golf course and related facilities located in Gallatin, Sumner County, Tennessee, known as the "Foxland Course".

Blueridge Venture is a wholly-owned subsidiary of ShoLodge, Inc., also a Tennessee corporation.

### E. Bankruptcy Filings

Fairvue voluntarily filed its Chapter 11 case on December 1, 2009 in response to a receivership action that American Security Bank & Trust had filed in state court. Later, on December 31, 2009, Foxland Marina commenced its Chapter 11 case in order to stay a pending foreclosure initiated by American Security Bank. Both Foxland and Blueridge filed Chapter 11 on April 1, 2010 in order to stay a foreclosure initiated by Wilson Bank & Trust.

## III. SUMMARY OF ASSETS

### A. Real Property

The real property owned by each Debtor is described in Article II above. These assets as summarized as follows:

| Fairvue Club | 18 hole golf course known as the Fairvue Lakes Course, Fairvue Clubhouse, including a practice facility, maintenance building, clubhouse with restaurant and locker and pro shop, and swimming facilities |
|---|---|
| Foxland Club | 18 hole golf course known as the Foxland Course, Foxland Clubhouse, including the Foxland mansion |

| | building, a temporary golf pro shop, and a restaurant building with restrooms |
|---|---|
| Foxland Harbor Marina | 2.28 acres on Old Hickory Lake |
| Blueridge Venture | Two lots in the Foxland development |

### B. Membership Accounts.

As of the date of this Disclosure Statement, the Fairvue Club has 790 active members, consisting of 431 full members, 40 junior members, 109 limited members, 24 non-resident members and 186 social members.

In February, 2010, Foxland commenced a marketing drive for a new country club at the Foxland Course known as "The Club at Foxland" (the "Foxland Club"). Currently, the Foxland Club has 40 active members, consisting of 35 full members, 3 junior members and 2 non-resident members.

### C. Equipment.

The Debtors own the following equipment:

| Fairvue Club | 2007 Chevrolet Cargo Van<br>2000 GMC Sierra<br>2001 GMC Yukon<br>2003 GMC Denali<br>2003 Hummer<br>2006 Trailer<br>2006 Utility Trailer<br>Restaurant equipment<br>Golf carts<br>Turf equipment |
|---|---|
| Foxland Club | Golf carts, restaurant and turf equipment |
| Foxland Harbor Marina | None |
| Blueridge Venture | None |

# IV. SUMMARY OF LIABILITIES

## A.    Secured Debt.

The Debtors' secured debt can be summarized as follows:

| Asset | Secured Creditor | Secured Claim |
|---|---|---|
| Fairvue Golf Course: | Sumner County Real Property Taxes | $124,771 |
| | City of Gallatin Real Property Taxes | $75,466 |
| | Leon Moore, assigned to American Security Bank & Trust (1st priority) | $4,069,000 |
| | Leslie Leon Moore 1997 Irrevocable Trust (2nd priority) | $716,000 |
| Foxland Golf Course | Sumner County Real Property Taxes | $105,075 |
| | City of Gallatin Real Property Taxes | $51,548 |
| | Wilson Bank & Trust (1st priority) | $5,873,000 |
| | Leon Moore, assigned to American Security Bank & Trust (2nd priority) | $4,069,000 |
| Fairvue Clubhouse and Restaurant | Sumner County Real Property Taxes | $42,403 |
| | City of Gallatin Real Property Taxes | $20,774 |
| | First State Bank (1st priority) | $4,660,550 |
| | Leon Moore Family Trust (2nd priority) | $4,195,000 |
| | Leon Moore, assigned to American Security Bank & Trust (3rd priority) | $4,069,000 |
| | Leslie Leon Moore 1997 Irrevocable Trust (4th priority) | $716,000 |
| Foxland Clubhouse | Sumner County Real Property Taxes | $62,862 |
| | City of Gallatin Real Property Taxes | $30,838 |

2338088 v6
111006-001  4/30/2010

| | | |
|---|---|---|
| | Wilson Bank & Trust (1st priority) | $5,873,000 |
| | Leon Moore Family Trust (2nd priority) | $4,195,000 |
| Foxland Marina | Sumner County Real Property Taxes | $8,521 |
| | City of Gallatin Real Property Taxes | $3,624 |
| | Leon Moore, assigned to American Security Bank & Trust (1st priority) | $4,069,000 |
| | Leon Moore Family Trust (2nd priority) | $4,195,000 |
| Blueridge Real Property | Sumner County Real Property Taxes | $13,693 |
| | City of Gallatin Real Property Taxes | $6,170 |
| | Wilson Bank & Trust (1st priority) | $5,873,000 |
| Golf Carts and turf equipment | Wells Fargo Financial Leasing | $1,047,306 |
| Turf Equipment | VGM Financial Services | $166,140 |
| Lawn Equipment | John Deere Landscapes | $21,151 |
| Fairvue accounts and equipment | Linda Moore | $303,211 |
| Foxland accounts and equipment | Linda Moore | $39,130 |

### B.    Priority Debt.

As of the commencement of the Fairvue case, Fairvue owed its employees approximately $31,000 in unpaid vacation/sick pay, 401k contributions, and medical benefits. By order of the Court entered at the beginning of this case, Fairvue got authority to pay these claims in full. The remaining priority debt of the Debtors consist of administrative claims incurred after the filing of the Debtors' petition and various tax obligations, including corporate employment taxes, sales taxes and real property tax debt. Most administrative claims have been paid during the course of this case, with the exception of professional fees and tax obligations which are summarized as follows:

| | |
|---|---|
| Bradley Arant Boult Cummings LLP Fairvue Club | As of April 15, 2010 $62,233 |

| | |
|---|---|
| Foxland Club | $6,192 |
| Foxland Harbor Marina | $27,528 |
| Blueridge Venture | $1,367 |
| VACO | As of April 15, 2010 |
| Fairvue Club | $18,770.50 |
| Foxland Club | $3,152.50 |
| Foxland Harbor Marina | $1,787.50 |
| Blueridge Venture | $682.50 |
| IRS | $60,100 |
| Tennessee Dept. of Labor | $12,546 |
| Tennessee Dept. of Revenue | $62,617 |

### C.    Unsecured Debt.

The aggregate of the Debtors' unsecured trade debt, as reflected on the Debtors' Schedules, was as follows:

| | |
|---|---|
| Fairvue Club | $437,000 |
| Foxland Club | $52,000 |
| Foxland Harbor Marina | $11,100 |
| Blueridge Venture | $5,000 |
| Total | $505,100 |

Approximately $212,000 of this debt represents credits owing to members of the Fairvue Club.

## V. LIQUIDATION ANALYSIS

For this Plan to be approved by the Court, a determination must be made that the Plan will provide to each creditor or equity security holder an amount, as of the Effective Date of the Plan, that is not less than the value of the property that each such creditor would receive or retain if all of the assets of the Debtor were sold and the proceeds thereof were distributed under Chapter 7 of the Bankruptcy Code. The Debtors believe that the Plan easily meets the liquidation test. The following is a review of the assets of the Debtors and the amounts that a Chapter 7 trustee would realize upon a liquidation of those assets.

Both Debtors own and operate eighteen hole golf courses—Fairvue Golf Course and Foxland Golf Course. The Fairvue Golf Course has associated with it a club house that includes locker facilities, a restaurant, pro shop, swimming pool and guest facilities. However, because of the amount of the secured debt encumbering these assets, the Debtors believe that a liquidation of their assets would not provide any distribution to the unsecured creditors. The liquidation values are summarized below:

| Asset | Liquidation Value | Aggregate Secured Liens |
|---|---|---|
| Fairvue Golf Course | $1,500,000 | $4,985,237 |
| Foxland Golf Course | $1,500,000 | $10,098,623 |
| Fairvue Clubhouse | $1,500,000 | $13,703,727 |
| Foxland Clubhouse | $500,000 | $10,161,700 |
| Foxland Marina | $500,000 | $8,276,145 |
| Blueridge Real Property | $350,000 | $5,892,863 |
| Fairvue Accounts and Clubhouse equipment | $252,000 | $303,211 |
| Foxland Accounts and Equipment | $60,000 | $39,130 |
| VGM Turf Equipment | TBD | $166,140 |
| Wells Fargo Turf Equipment | TBD | $1,047,306 |
| John Deere Lawn Equipment | $21,151 | $21,151 |
| Golf Carts (152 carts) | $239,400 | $1,047,306 |

In a Chapter 7 liquidation, preferences and fraudulent transfers can be pursued to recover assets for the benefit of unsecured creditors. No analysis has been conducted to determine the existence of avoidance actions that could be brought by a Chapter 7 trustee. However, since the revenues generated by Fairvue prior to the commencement of this case were just enough to pay its monthly operating expenses, it is not believed that there exist any significant recoverable preference claims. Regardless, to the extent that such a cause of action would benefit the estate, the Plan provides for the retention of those claims for the benefit of the unsecured creditors.

In the final analysis, it is firmly believed by the Debtors that a Chapter 7 liquidation would result in no distribution to unsecured creditors. The Plan provides for ten annual payments of Net Operating Surplus to the unsecured creditors, and a junior lien on all real property to secure such payments. Accordingly, the Debtors assert that the distribution under the Debtors' Plan easily exceeds the amounts that unsecured creditors would receive in a Chapter 7 liquidation.

## VI. SUMMARY OF PLAN

### A.    Transfer of Assets.

Under the Plan, the assets, liabilities and operations of the Debtors will continue in the same entity.

### B.    Payment of Claims.

1.    Unimpaired Claims.  The only group of creditors that are not impaired, and therefore are not classified under the Plan, are the priority trade creditors, real property tax claims and post-petition services provided by professionals.  These obligations will be paid on the Effective Date of the Plan or such later date that such obligations become due, provided the tax claims shall be payable in five equal annual installments amortizing the Allowed Claim in full with interest at the statutory rate over a period ending December 1, 2014.  No penalty shall accrue on such claims after the Date of Filing.  Additionally, the U. S. Trustee's fee required to be paid by statute shall be paid current as of the Effective Date of the Plan.

2.    Impaired Claims.  The remaining classes of claims, with the exception of the Allowed Unsecured Claims and Interests of Foxland Marina and Blueridge, are impaired and will be classified and treated under the Plan as follows:

Class 1:  Class 1 consists of the Allowed Secured Claim of Leon Moore.  Mr. Moore will retain his liens on the real property known as the Fairvue Golf Course, Fairvue Clubhouse, Foxland Golf Course, and Foxland Marina property in the same priority that existed at the Date of Filing pursuant to the terms of the documents evidencing those liens.  However, because he assigned his note and liens to American Security Bank and Trust ("American Security"), payments hereunder shall be made directly to American Security.  The amount of the American Security claim as of the Date of Filing is estimated to be approximately $3,560,000, and the amount of Mr. Moore's claim was $4,069,000  The Allowed Secured Claim for Mr. Moore is estimated to be $2,722,120 and the remaining amount will be unsecured in Class 10.  Accordingly Mr. Moore will not receive any distribution for an Allowed Claim in excess of the amount assigned to American Security.

This Allowed Secured Claim shall be paid under the Plan as follows:

(i) For the first two years after the Effective Date of the Plan, interest only shall accrue monthly on the Allowed Secured Claim at a fixed annual rate equal to the treasury yield for U.S. Treasury bills with comparable maturity as determined as of the Confirmation Hearing plus two percent (2%).  Such interest shall be payable prior to any payment to the Unsecured Creditors'

Fund established under the Plan and in any event on, or prior, to the second anniversary of the Effective Date of the Plan.

(ii) On the second anniversary of the Effective Date of the Plan, the remaining Allowed Secured Claim shall be paid in equal monthly installments of principal and interest at the fixed rate provided above in an amount that would fully amortize the Allowed Secured Claim for a period of thirty (30) years from the Effective Date of the Plan.

(iii) All amounts owing on the Allowed Secured Claim, including unpaid post-confirmation interest thereon, shall be due and payable in full 120 months after the Effective Date of the Plan.

Class 2: Class 2 consists of the Allowed Secured Claim of First State Bank. First State Bank will retain its first priority lien on the real property and improvements known as the Fairvue Clubhouse pursuant to the terms of the loan documents evidencing that lien.

The amount of the First State Bank claim as of the Date of Filing, as evidenced by the proof of claim filed by First State Bank was $4,660,000. The Allowed Secured Claim for First State Bank is estimated to be $2,505,379 and the remaining amount will be unsecured to be included in Class 10.

This Allowed Secured Claim shall be paid under the Plan as follows:

(i) For the first two years after the Effective Date of the Plan, interest only shall accrue monthly on the Allowed Secured Claim at a fixed annual rate equal to the treasury yield for U.S. Treasury bills with comparable maturity as determined as of the Confirmation Hearing plus two percent (2%). Such interest shall be payable prior to any payment to the Unsecured Creditors' Fund established under the Plan and in any event on, or prior, to the second anniversary of the Effective Date of the Plan.

(ii) On the second anniversary of the Effective Date of the Plan, the Allowed Secured Claim shall be paid in equal monthly installments of principal and interest at the fixed rate provided above in an amount that would fully amortize the Allowed Secured Claim for a period of thirty (30) years from the Effective Date of the Plan.

(iii) All amounts owing on the Allowed Secured Claim, including unpaid post-confirmation interest thereon, shall be due and payable in full 120 months after the Effective Date of the Plan.

Class 3: Class 3 consists of the Allowed Claim of the Leon Moore Family Trust, which has a lien on the Foxland Marina property, the Foxland Clubhouse and Fairvue Clubhouse, to secure an indebtedness in the amount of $4,195,000. The Allowed Secured Claim for the Leon Moore Family Trust is estimated to be $1,397,240 and the remaining amount is unsecured. The Trust will be issued equity interests for Fairvue and Foxland in full satisfaction of its Allowed Secured and Unsecured Claims.

Class 4: Class 4 consists of the Allowed Secured Claim of the Leslie Leon Moore 1997 Irrevocable Trust. This Trust will retain its lien on the real property known as the Fairvue Golf Course and Fairvue Clubhouse in the same priority existing as of the Date of Filing pursuant to the terms of the loan documents evidencing those liens securing a pre-petition indebtedness in the amount of $716,000. The Allowed Secured Claim for the Leslie Leon Moore 1997 Irrevocable Trust is estimated to be $238,480 and the remaining amount is unsecured Class 10.

This Allowed Secured Claim shall be paid under the Plan as follows:

(i) For the first two years after the Effective Date of the Plan, interest only shall accrue monthly on the Allowed Secured Claim at a fixed annual rate equal to the treasury yield for U.S. Treasury bills with comparable maturity as determined as of the Confirmation Hearing plus two percent (2%). Such interest shall be payable prior to any payment to the Unsecured Creditors' Fund established under the Plan and in any event on, or prior, to the second anniversary of the Effective Date of the Plan.

(ii) On the second anniversary of the Effective Date of the Plan, the Allowed Secured Claim shall be paid in equal monthly installments of principal and interest at the fixed rate provided above in an amount that would fully amortize the Allowed Secured Claim for a period of thirty (30) years from the Effective Date of the Plan.

(iii) All amounts owing on the Allowed Secured Claim, including unpaid post-confirmation interest thereon, shall be due and payable in full 120 months after the Effective Date of the Plan.

Class 5: Class 5 consists of the Allowed Secured Claim of Linda Moore. Linda Moore will retain her first priority security interest in the accounts, furniture, fixtures and equipment of Fairvue and Foxland pursuant to the terms of the loan documents evidencing those liens. The amount of the Linda Moore claim as of the Date of Filing was $303,211.32 for Fairvue and $39,130 for Foxland. The Allowed Secured Claim for Linda Moore is estimated to be equal to the amount of her Claim with each Debtor. To the extent that there is a deficiency, the remaining amount will be unsecured to be included in Class 10.

This Allowed Secured Claim shall be paid under the Plan as follows:

(i) Interest shall be payable monthly on the Allowed Secured Claim until the date of maturity.

(ii) Interest shall accrue on the Allowed Secured Claim following the Effective Date of the Plan at a fixed annual rate equal to the prime rate published in the Wall Street Journal on the date of the Confirmation Hearing plus two percent (2%).

(iii) This Allowed Secured Claim and any unpaid post-confirmation accrued interest thereon shall be due and payable in full thirty-six (36) months after the Effective Date of the Plan.

Class 6: Class 6 consists of the Allowed Secured Claim of VGM Financial Services. VGM Financial Services will retain its first priority lien in certain turf equipment of Fairvue pursuant to the terms of the loan documents evidencing that security interest. The amount of the VGM Financial Services claim as of the Date of Filing, based on the proof of claim filed by VGM, was $166,140. The value of the collateral securing the Allowed Claim for VGM is unknown as of the date of this Disclosure Statement. This value will be determined by appraisal or agreement with VGM prior to or at Confirmation. To the extent that there is a deficiency, the remaining amount will be unsecured to be included in Class 10.

This Allowed Secured Claim shall be paid under the Plan as follows:

(i) The Allowed Secured Claim, plus accrued post-confirmation interest, shall be payable in equal monthly installments in an amount that would fully amortize the Allowed Secured Claim for a period of five years.

(ii) Interest shall accrue on the Allowed Secured Claim following the Effective Date of the Plan at a fixed annual rate equal to the prime rate published in the Wall Street Journal on the date of the Confirmation Hearing plus two percent (2%).

(iii) All amounts owing on this Allowed Secured Claim, including any unpaid post-confirmation accrued interest thereon, shall be due and payable in full sixty (60) months after the Effective Date of the Plan.

Class 7: Class 7 consists of the Allowed Secured Claim of Wells Fargo Financial Leasing Services. Wells Fargo will retain its first priority lien in certain golf cart and turf equipment used by Fairvue and Foxland and those entities will assume the obligations owing to Wells Fargo up to the amount of its Allowed Secured Claim. The amount of the Wells Fargo claim is estimated to be approximately $1,047,306 The value of the collateral securing the Allowed Claim for Wells Fargo is unknown as of the date of this Disclosure Statement. This value will be determined by appraisal or agreement with Wells Fargo prior to or at Confirmation. To the extent that there is a deficiency, the remaining amount will be unsecured to be included in Class 10.

This Allowed Secured Claim shall be paid under the Plan as follows:

(i) The Allowed Secured Claim, plus accrued post-confirmation interest, shall be paid in equal monthly installments in an amount that would fully amortize the Allowed Secured Claim for a period of five years.

(ii) Interest shall accrue on the Allowed Secured Claim following the Effective Date of the Plan at a fixed annual rate equal to the prime rate published in the Wall Street Journal on the date of the Confirmation Hearing plus two percent (2%).

(iii) All amounts owing on this Allowed Secured Claim, including any unpaid post-confirmation accrued interest thereon, shall be due and payable in full sixty (60) months after the Effective Date of the Plan.

Class 8: Class 8 consists of the Allowed Secured Claim of Wilson Bank & Trust. Wilson Bank will retain its first priority lien on the real property known as the Foxland Golf Course, Foxland Clubhouse and the Blueridge property pursuant to the terms of the loan documents evidencing those liens. The amount of the Wilson Bank claim is estimated to be approximately $5,873,000. The Allowed Secured Claim for Wilson Bank is estimated to be $3,473,043 and the remaining amount will be unsecured in Class 11.

This Allowed Secured Claim shall be paid under the Plan as follows:

(i) For the first two years after the Effective Date of the Plan, interest only shall accrue monthly on the Allowed Secured Claim at a fixed annual rate equal to the treasury yield for U.S. Treasury bills with comparable maturity as determined as of the Confirmation Hearing plus two percent (2%). Such interest shall be payable prior to any payment to the Unsecured Creditors' Fund established under the Plan and in any event on, or prior, to the second anniversary of the Effective Date of the Plan.

(ii) On the second anniversary of the Effective Date of the Plan, the remaining Allowed Secured Claim shall accrue in equal monthly installments of principal and interest at the fixed rate provided above in an amount that would fully amortize the Allowed Secured Claim for a period of thirty (30) years from the Effective Date of the Plan.

(iii) All amounts owing on the Allowed Secured Claim, including unpaid post-confirmation interest, shall be due and payable in full 120 months after the Effective Date of the Plan.

Class 9: Class 9 consists of the Allowed Secured Claim of John Deere Landscapers. By Order entered March 9, 2010, John Deere got relief from stay and has recovered the equipment securing its Claim. Under the Plan, this surrender of all of the equipment pledged to secure the John Deere Allowed Secured Claim shall be in full satisfaction of the John Deere Allowed Claim. The amount of the John Deere claim, as evidenced by its proof of claim, is $21,151.

Class 10: Class 10 consists of the Allowed Unsecured Claims of Fairvue. On the Effective Date of the Plan, an Unsecured Creditors' Fund shall be created for the benefit of all Unsecured Creditors in Class 10 and 11. An agent for the benefit of all Allowed Unsecured Claims in Class 10 and 11, as designated by majority vote of such creditors who vote, shall hold a junior lien on the real property and improvements of Fairvue and Foxland existing as of the Effective Date of the Plan to secure the payments under the Plan to this Fund. This lien shall be nonrecourse to the Debtors and shall be evidenced by a deed of trust in the name of a trustee to be designated by a majority of those in Class 10 and 11 who vote.

The Allowed Claims within this Class 10 and 11 shall share prorata the amounts generated from the Net Operating Surplus of the Reorganized Debtors. The Net Operating Surplus, calculated as of the anniversary of the Effective Date of the Plan, shall be paid to the Unsecured Fund for prorata distribution to the Class 10 and 11 creditors within thirty days thereafter. The obligation of Fairvue and Foxland to pay annual Net Operating Surplus

payments to the Unsecured Creditors' Fund shall continue for a period of ten (10) annual payments, unless earlier paid in full.

Class 11: Class 11 consists of the Allowed Unsecured Claims of Foxland. On the Effective Date of the Plan, an Unsecured Creditors' Fund shall be created for the benefit of all Unsecured Creditors in Class 10 and 11. An agent for the benefit of all Allowed Unsecured Claims in Class 10 and 11, as designated by majority vote of such creditors who vote, shall hold a junior lien on the real property and improvements of Fairvue and Foxland existing as of the Effective Date of the Plan to secure the payments under the Plan to this Fund. This lien shall be nonrecourse to the Debtors and shall be evidenced by a deed of trust in the name of a trustee to be designated by a majority of those in Class 10 and 11 who vote.

The Allowed Claims within this Class 11 shall share prorata the amount generated from the Net Operating Surplus of the Reorganized Debtors Fairvue and Foxland with Class 10. The Net Operating Surplus, calculated as of the anniversary of the Effective Date of the Plan, shall be paid to the Unsecured Fund for prorata distribution to the Class 10 and 11 creditors within thirty days thereafter. The obligation of Fairvue and Foxland to pay annual Net Operating Surplus payments to the Unsecured Creditors' Fund shall continue for a period of ten (10) annual payments, unless earlier paid in full.

Class 12: Class 12 consists of the Allowed Unsecured Claims of Foxland Marina. This Class will not receive any distribution under the Debtors' Plan.

Class 13: Class 13 consists of the Allowed Unsecured Claims of Blueridge. This Class will not receive any distribution under the Debtors' Plan.

Class 14: Class 14 consists of the Interests of Fairvue. All interests in Class 14 shall terminate upon the Effective Date of the Plan. Instead, as of the Effective Date of the Plan, new interests in Fairvue shall be issued to Leon Moore Family Trust in satisfaction of its Allowed Secured and Unsecured Claims.

Class 15: Class 15 consists of the Interests of Foxland. All interests in Class 15 shall terminate upon the Effective Date of the Plan. Instead, as of the Effective Date of the Plan, new interests in Foxland shall be issued to Leon Moore Family Trust in satisfaction of its Allowed Secured and Unsecured Claims.

Class 16 Class 16 consists of the Interests of Foxland Marina. These Interests will be retained by their existing holders.

Class 17: Class 16 consists of the Interests of Foxland Marina. These Interests will be retained by their existing holders.

The first payment to any Allowed Secured Claim payable under the Plan will be due on the first day of the first month following the Effective Date of the Plan, and subsequent payments will be due on the first day of each month thereafter until the date of maturity, provided no default shall exist under the Plan for the Reorganized Debtors' failure to make interest only

payments on Allowed Secured Claims in Classes, 1, 2, 4 or 8 during the first two years following the Effective Date of the Plan. Any terms of the loan documents evidencing an Allowed Claim payable hereunder, which may conflict with the terms of the Plan, shall be deemed modified by the terms of the Plan. At such time that the obligations of any Class are paid in accordance with the terms of the Plan, the Allowed Secured Claim shall be deemed paid in full and the Reorganized Debtors shall be entitled to a full release of the lien or security interest held by the Claimant securing that obligation. All creditors will be stayed in the enforcement and collection of any Claim owed by the Debtors during the term of the Plan and upon the completion of the Plan, Fairvue and Foxland shall receive a discharge of all Claims.

After Confirmation, without further Court order or notice, any of the Debtors will be authorized to sell, redeem, or otherwise obtain the release of any lien on the Foxland Marina and/or the Blueridge properties for a release payment equal to at least $500,000 for the Foxland Marina property and $175,000 for each of the Blueridge properties, or such other amount that may be determined by the Court at Confirmation to be appropriate. At the closing for any such transaction, the release payment will be paid to the holder of any remaining Allowed Secured Claim with a lien on that property to be applied to the outstanding principal and interest allowed to paid under the Plan. Any release payment must be funded from sources outside the operations of the Reorganized Debtors or otherwise in a way not to affect the timing or distribution to the Class 10 and 11 Claims.

The Allowed Secured Claims determined by the Debtors for the purposes of the Plan have been calculated based on an allocation of a going concern value to Fairvue and Foxland as a joint going concern operation. Because there exists multiple layers of secured debt on different properties, a simple going concern value of each property is not sufficient to provide a market value for each secured creditor. Instead the Debtors have allocated going concern value based on the attached Schedule 6.02. The Allowed Secured Claim is a combination of the liquidation value of each property and a prorata allocation of the aggregate going concern value of all Fairvue and Foxland properties and operations.

C.      Tax Consequences

There are no known negative tax consequences created by the Plan. The sale of Property by the Reorganized Debtors may create tax gain to the Reorganized Debtors if the value derived from the sale exceeds the owner's basis in that property. Any tax resulting from this gain will be an obligation of the Reorganized Debtors and may reduce the Net Operating Surplus that would otherwise be available for distribution to the unsecured creditors under the Plan. Otherwise distributions to creditors will be taxed in the same way that any payment by the Debtors to those creditors would have been taxed. In most instances, the payments will be taxable income to the creditor for which the creditor may pay income taxes if its business expenses and deductions do not offset the amount of income received by that creditor.

All creditors are urged to review the Debtors' Plan for a more detailed description of the treatment to be provided for each impaired class. To the extent the Plan and this Disclosure Statement are inconsistent, the terms of the Plan shall control.

### D. Executory Contracts.

All executory contracts and unexpired leases that either have not been rejected by Court order prior to the Effective Date of the Plan or are not subject to a motion filed by a Debtor to reject such agreement prior to the Effective Date of the Plan shall be assumed and assigned to the Reorganized Debtors. The Confirmation of the Plan shall be deemed to cure any pre-existing default under an assumed agreement.

### E. Implementation of the Plan.

The Effective Date of the Plan is defined under the Plan to be the first day of the first full month following thirty days after the entry of the Court order confirming the Plan.

The Debtors will file with the court an accounting and will seek the entry of a Final Decree as required under Bankruptcy Rule 3022 following the Effective Date of the Plan and the administration of the estate. During this period the Reorganized Debtors shall submit reports and pay quarterly fees to the U.S. Trustee as required by law.

To the extent any provision of this Disclosure Statement conflicts with the terms of the Plan, the Plan provision will control.

## VII. CONFIRMATION REQUIREMENTS

To confirm the Plan, the Court must, after notice provided by separate order, hold a hearing on the question of confirmation. Any creditor may object to confirmation of the Plan and appear at the confirmation hearing to prosecute such objection. The requirements for confirmation of a Chapter 11 Plan are set forth in detail in 11 U.S.C. § 1129. The following is a summary of the more notable requirements:

**a.** **Acceptance by Impaired Classes**. At least one class of impaired claimants must vote to accept the Plan. 11 U.S.C. § 1129(a)(10). For a class to accept the Plan, the Plan must receive favorable votes from claimants within that class who hold at least two-thirds in dollar amount of the claims that vote and more than one-half (½) in number of the claims that vote. Only the amount and number of claims who actually submit a timely ballot are counted in determining the requisite number.

**b.** **Feasibility**. The Court is required to find that confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Debtor. 11 U.S.C. § 1129(a)(11). In short, the Court must find that the Plan adequately addresses the needs for reorganization and that it is likely that the reorganized entity will be able to perform pursuant to the Plan. A finding by the Court that the Plan meets these requirements is not a guarantee that the Plan will be fully performed.

The Debtors assert that the Plan is feasible. Attached hereto are income statements summarizing Fairvue and Foxland operations in 2009, and projections of annual

operations during the term of the Plan. The Debtors believe that all projections are realistic and enable the Debtors to have the capital they need to operate and pay their long term debts in full.

      **c.**    <u>**Liquidation Test.**</u> As discussed in Article V herein, the Plan must pay to each class that has not accepted the Plan an amount determined as of the Effective Date of the Plan that is not less than the amount a claimant within that nonaccepting class would receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code. 11 U.S.C. § 1129(a)(7). The Debtors assert that the Plan easily satisfies this requirement by paying creditors a portion of their allowed claims. See Article V for a complete discussion of the Debtors' liquidation analysis.

      **d.**    <u>**"Cramdown" Provisions**</u>. If an impaired class does not vote to accept the Plan, as discussed in paragraph a above, the Court may still confirm the Plan if the Court determines that the Plan treatment of the class of claims rejecting the Plan is fair and equitable and does not discriminate unfairly. 11 U.S.C. § 1129(b). The Debtors intend to invoke these "cramdown" provisions should any class of impaired claims fail to accept the Plan. The Debtors believe that with respect to each class, the Plan is fair and equitable and does not discriminate unfairly.

Dated the 30th day of April 2010.

                    **Fairvue Club Properties, LLC**

                    By: _____
                         Leon Moore
                         President

                    **Foxland Club Properties, LLC**

                    By: _____
              Leon Moore
              President

                    **Foxland Harbor Marina, LLC**

                    By:_____
              Chris Wicke
              President

**Blueridge Venture, Inc.**


By: _/s/ Leon Moore_
Leon Moore
President



Counsel:

_/s/ William L. Norton III_
William L. Norton III
Bradley Arant Boult Cummings PLLC
1600 Division St., Suite 700
Nashville, Tennessee  37203
(615) 252-2397
bnorton@babc.com

**THE GOLF CLUB AT FAIRVUE**
**RESULTS OF OPERATIONS**
**1/1/09 THRU 12/31/09  (Note 1)**

| | | |
|---|---|---:|
| **Total Revenue** | | |
| Initiation Fees | $ | 211,000 |
| Golf Fees | | 898,280 |
| Member Dues | | 2,056,255 |
| Golf Shop Merchandise | | 116,284 |
| Admin | | 82,466 |
| Food and Beverage | | 1,539,459 |
| Pool Revenue | | 88,060 |
| **Total Revenue** | | **4,991,804** |
| **Cost of Sales** | | |
| Cost of Goods Sold-Merch | | 66,462 |
| Cost of Goods Sold-F&B | | 547,190 |
| **TOTAL COST OF SALES** | | 613,652 |
| **Net Revenue** | | 4,378,152 |
| **Payroll** | | |
| GOLF COURSE MAINT | | 403,313 |
| ADMIN | | 413,995 |
| F&B | | 1,084,909 |
| MARKETING | | 89,058 |
| GOLF SHOP | | 332,201 |
| POOL | | 38,709 |
| **TOTAL PAYROLL EXP.** | | 2,362,185 |
| **Operating Expenses** | | |
| GOLF COURSE MAINT | | (22,825) |
| ADMIN (INCL PROP TAXES) (Note 2) | | 1,038,039 |
| F&B | | 184,609 |
| MARKETING | | 94,493 |
| GOLF SHOP | | 19,056 |
| POOL | | 20,440 |
| **TOTAL OPERATING EXP.** | | 1,333,812 |
| **NET OPERATING RESULTS (Note 3)** | $ | 682,155 |

1.  This report reflects results of the operation of Fairvue Golf and Country Club for the entire twelve months of 2009. It should be noted that ownership changed effective August 1, 2009.  Records were maintained separately for each owner but accounting practices remained consistent.  No debt service or capitalized lease payments are reflected herein.
2.  This line item includes a property tax accrual.  However the property taxes were never paid, resulting in a claim to be paid in the bankruptcy.
3.  Due to the change in ownership and resulting change in basis of the assets, depreciation is not reflected on this statement of results of operations.

**THE GOLF CLUB AT FOXLAND**
**RESULTS OF OPERATIONS**
**1/1/09 THRU 12/31/09  (Note 1)**

| **Total Revenue** | | |
|---|---:|---:|
| Initiation Fees | $ | - |
| Golf Fees | | 49,206 |
| Member Dues | | - |
| Golf Shop Merchandise | | - |
| Admin | | - |
| Food and Beverage | | 10,337 |
| Pool Revenue | | - |
| **Total Revenue** | | **59,543** |
| **Cost of Sales** | | |
| Cost of Goods Sold-Merch | | 26,615 |
| Cost of Goods Sold-F&B | | (13,972) |
| **TOTAL COST OF SALES** | | 12,643 |
| **Net Revenue** | | **46,900** |
| **Payroll** | | |
| GOLF COURSE MAINT | | 223,956 |
| ADMIN | | 87,568 |
| F&B | | 49,367 |
| MARKETING | | - |
| GOLF SHOP | | 158,453 |
| POOL | | - |
| **TOTAL PAYROLL EXP.** | | **519,344** |
| **Operating Expenses** | | |
| GOLF COURSE MAINT | | 43,821 |
| ADMIN (Note 2) | | 191,685 |
| F&B | | 5,595 |
| MARKETING | | 3,687 |
| GOLF SHOP | | 3,575 |
| POOL | | - |
| **TOTAL OPERATING EXP.** | | **248,363** |
| **NET OPERATING RESULTS (Note 3)** | $ | **(720,807)** |

Note 1 - During 2009, Foxland Golf Course was considered to be part of the golf course
operations at Fairvue so all revenues are reflected on Fairvue's P&L.  This report reflects only operating
expenses related exclusively to the operation and maintenance of the Foxland Golf Course, along with golf shop sales
and the limited food and beverage sales from the shop at Foxland.
2.  Does not include property taxes, depreciation, debt service or capitalized lease payments.
3.  Foxland Golf Course closed in October 2009 for the winter.

# FAIRVUE GOLF CLUB
## 10 YEAR PROJECTIONS SUMMARY

| | 2010 (1) | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Total Revenue** | | | | | | | | | | | |
| Initiation Fees | 212,250 | 261,550 | 468,100 | 332,200 | 228,700 | 220,600 | 220,600 | 220,600 | 220,600 | 220,600 | 220,600 |
| Golf Fees | 946,275 | 1,049,740 | 1,065,110 | 1,080,480 | 1,095,850 | 1,111,220 | 1,126,590 | 1,141,960 | 1,157,330 | 1,172,700 | 1,188,070 |
| Member Dues | 2,216,388 | 2,442,665 | 2,513,735 | 2,644,835 | 2,718,995 | 2,914,515 | 2,962,485 | 3,181,196 | 3,272,265 | 3,455,613 | 3,552,101 |
| Golf Shop Merchandise | 242,122 | 282,484 | 286,776 | 291,069 | 295,362 | 299,655 | 303,948 | 308,240 | 312,533 | 316,826 | 321,119 |
| Admin | 102,575 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 |
| Food and Beverage | 1,518,444 | 1,671,781 | 1,694,031 | 1,701,881 | 1,709,731 | 1,717,581 | 1,725,431 | 1,754,881 | 1,762,731 | 1,770,581 | 1,778,431 |
| Pool Revenue | 69,350 | 70,700 | 74,300 | 74,300 | 74,300 | 74,300 | 74,300 | 74,300 | 79,700 | 79,700 | 79,700 |
| **Total Revenue** | 5,307,404 | 5,898,920 | 6,222,053 | 6,244,766 | 6,242,938 | 6,457,871 | 6,533,354 | 6,801,178 | 6,925,159 | 7,136,021 | 7,260,021 |
| **Cost of Sales** | | | | | | | | | | | |
| Cost of Goods Sold-Merch | 185,631 | 211,863 | 215,082 | 218,302 | 221,522 | 224,741 | 227,961 | 231,180 | 234,400 | 237,620 | 240,839 |
| Cost of Goods Sold-F&B | 594,362 | 624,704 | 628,158 | 631,612 | 635,066 | 638,520 | 641,974 | 645,428 | 648,882 | 652,336 | 655,790 |
| **Total Cost of Sales** | 779,994 | 836,566 | 843,240 | 849,914 | 856,587 | 863,261 | 869,934 | 876,608 | 883,282 | 889,955 | 896,629 |
| **Net Revenue** | 4,527,411 | 5,062,354 | 5,378,813 | 5,394,852 | 5,386,351 | 5,594,610 | 5,663,420 | 5,924,570 | 6,041,878 | 6,246,065 | 6,363,392 |
| **Payroll** | | | | | | | | | | | |
| GCM | 432,453 | 448,643 | 455,372 | 464,480 | 473,769 | 483,245 | 492,910 | 502,768 | 512,823 | 523,080 | 533,541 |
| HOA | 110,922 | 116,844 | 118,596 | 120,988 | 123,388 | 125,855 | 128,373 | 130,940 | 133,559 | 136,230 | 138,955 |
| ADMIN | 635,190 | 579,722 | 588,418 | 600,187 | 612,190 | 624,434 | 636,923 | 649,661 | 662,654 | 675,908 | 689,426 |
| CLUB & GROUNDS MAINT | 126,866 | 110,026 | 111,676 | 113,910 | 116,188 | 118,512 | 120,882 | 123,300 | 125,766 | 128,281 | 130,847 |
| F&B | 929,482 | 959,843 | 974,241 | 993,726 | 1,013,600 | 1,033,872 | 1,054,550 | 1,075,641 | 1,097,154 | 1,119,097 | 1,141,479 |
| MARKETING | 71,342 | 66,529 | 67,527 | 68,877 | 70,255 | 71,660 | 73,093 | 74,555 | 76,046 | 77,567 | 79,118 |
| GOLF SHOP | 314,803 | 330,545 | 335,503 | 342,214 | 349,058 | 356,039 | 363,160 | 370,423 | 377,831 | 385,388 | 393,096 |
| POOL | 29,200 | 29,638 | 30,083 | 30,684 | 31,298 | 31,924 | 32,562 | 33,214 | 33,878 | 34,555 | 35,247 |
| **TOTAL PAYROLL EXP.** | 2,650,257 | 2,641,790 | 2,681,417 | 2,735,045 | 2,789,746 | 2,845,541 | 2,902,452 | 2,960,501 | 3,019,711 | 3,080,105 | 3,141,707 |
| **Operating Expenses** | | | | | | | | | | | |
| GCM | 126,576 | 131,545 | 133,518 | 136,189 | 138,912 | 141,691 | 144,524 | 147,415 | 150,363 | 153,370 | 156,438 |
| HOA | (137,774) | (138,012) | (140,082) | (142,883) | (145,741) | (148,656) | (151,629) | (154,662) | (157,755) | (160,910) | (164,128) |
| ADMIN | 902,844 | 904,364 | 917,930 | 936,288 | 955,014 | 974,114 | 993,597 | 1,013,469 | 1,033,738 | 1,054,413 | 1,075,501 |
| CLUB & GROUNDS MAINT | 19,935 | 17,465 | 17,727 | 18,081 | 18,443 | 18,812 | 19,188 | 19,572 | 19,963 | 20,362 | 20,769 |
| F&B | 129,541 | 205,879 | 208,967 | 213,146 | 217,409 | 221,757 | 226,193 | 230,716 | 235,331 | 240,037 | 244,838 |
| MARKETING | 43,260 | 52,780 | 53,572 | 54,643 | 55,736 | 56,851 | 57,988 | 59,147 | 60,330 | 61,537 | 62,768 |
| GOLF SHOP | 72,811 | 48,974 | 49,708 | 50,703 | 72,117 | 83,559 | 85,230 | 86,935 | 88,673 | 90,447 | 92,256 |
| POOL | 19,738 | 21,289 | 21,609 | 22,041 | 22,482 | 22,931 | 23,390 | 23,858 | 24,335 | 24,822 | 25,318 |
| **TOTAL OPERATING EXP.** | 1,176,932 | 1,244,284 | 1,262,948 | 1,308,207 | 1,334,371 | 1,371,059 | 1,398,480 | 1,426,450 | 1,454,979 | 1,484,078 | 1,513,760 |
| **CASH AVAIL FOR PLAN PYMTS (2)** | 700,222 | 1,176,280 | 1,434,448 | 1,351,600 | 1,262,234 | 1,378,011 | 1,362,488 | 1,537,619 | 1,567,188 | 1,681,882 | 1,707,925 |
| **Total Golf Members End of Year** | 614 | 624 | 634 | 644 | 654 | 664 | 674 | 684 | 694 | 704 | 714 |

(1) Includes actual results through March 31.
(2) These results do not include property taxes, capitalized equipment lease payments or any debt service payments.

# FOXLAND GOLF CLUB
## 10 YEAR PROJECTIONS SUMMARY

| | 2010* | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Total Revenue** | | | | | | | | | | | |
| Initiation Fees | 38,500 | 276,500 | 132,000 | 276,000 | 174,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 |
| Golf Fees | 165,071 | 295,483 | 384,370 | 470,429 | 542,131 | 582,161 | 622,191 | 662,221 | 702,251 | 742,281 | 782,311 |
| Member Dues | 210,957 | 479,254 | 615,744 | 759,790 | 861,686 | 972,222 | 1,061,777 | 1,140,273 | 1,218,770 | 1,297,266 | 1,375,763 |
| Golf Shop Merchandise | 30,371 | 58,179 | 74,748 | 89,575 | 102,013 | 110,062 | 118,111 | 126,160 | 134,209 | 142,258 | 150,307 |
| Admin | 190,000 | 200,000 | 200,000 | 200,000 | 200,000 | 200,000 | 200,000 | 200,000 | 200,000 | 200,000 | 200,000 |
| Food and Beverage | 66,214 | 101,145 | 119,067 | 132,795 | 144,382 | 154,195 | 164,007 | 173,820 | 183,632 | 193,445 | 203,257 |
| Pool Revenue | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Total Revenue** | 701,113 | 1,410,560 | 1,525,929 | 1,928,588 | 2,024,212 | 2,138,640 | 2,286,086 | 2,422,474 | 2,558,862 | 2,695,250 | 2,831,638 |
| **Cost of Sales** | | | | | | | | | | | |
| Cost of Goods Sold-Merch | 22,618 | 43,635 | 56,061 | 67,181 | 76,510 | 82,547 | 88,583 | 94,620 | 100,657 | 106,694 | 112,730 |
| Cost of Goods Sold-F&B | 25,050 | 38,435 | 45,245 | 50,462 | 54,865 | 58,594 | 62,323 | 66,051 | 69,780 | 73,509 | 77,238 |
| **Total Cost of Sales** | 47,668 | 82,069 | 101,306 | 117,643 | 131,375 | 141,141 | 150,906 | 160,672 | 170,437 | 180,203 | 189,968 |
| **Net Revenue** | 653,445 | 1,328,491 | 1,424,623 | 1,810,945 | 1,892,837 | 1,997,499 | 2,135,180 | 2,261,802 | 2,388,425 | 2,515,047 | 2,641,670 |
| **Payroll** | | | | | | | | | | | |
| GCM | 253,154 | 286,316 | 290,611 | 296,423 | 302,352 | 308,399 | 314,567 | 320,858 | 327,275 | 333,821 | 340,497 |
| HOA | 26,821 | 33,396 | 33,897 | 34,575 | 35,266 | 35,972 | 36,691 | 37,425 | 38,173 | 38,937 | 39,716 |
| ADMIN | 4,239 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| F&B | 21,337 | 22,757 | 23,098 | 23,560 | 24,031 | 24,512 | 25,002 | 25,502 | 26,012 | 26,533 | 27,063 |
| MARKETING | 8,714 | 25,919 | 26,307 | 26,833 | 27,370 | 27,917 | 28,476 | 29,045 | 29,626 | 30,219 | 30,823 |
| GOLF SHOP | 96,395 | 109,011 | 110,646 | 112,859 | 115,116 | 117,419 | 119,767 | 122,162 | 124,606 | 127,098 | 129,640 |
| POOL | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **TOTAL PAYROLL EXP.** | 410,661 | 477,399 | 484,560 | 494,251 | 504,136 | 514,218 | 524,503 | 534,993 | 545,693 | 556,607 | 567,739 |
| **Operating Expenses** | | | | | | | | | | | |
| GCM | 103,272 | 129,225 | 131,163 | 133,787 | 136,462 | 139,192 | 141,975 | 144,815 | 147,711 | 150,665 | 153,679 |
| HOA | (38,395) | (40,418) | (41,024) | (41,845) | (42,682) | (43,535) | (44,406) | (45,294) | (46,200) | (47,124) | (48,066) |
| ADMIN | 143,510 | 94,260 | 95,674 | 97,587 | 99,539 | 101,530 | 103,561 | 105,632 | 107,744 | 109,899 | 112,097 |
| F&B | 3,374 | 3,502 | 3,555 | 3,626 | 3,699 | 3,772 | 3,848 | 3,925 | 4,003 | 4,083 | 4,165 |
| MARKETING | 40,617 | 18,780 | 19,062 | 19,443 | 19,832 | 20,228 | 20,633 | 21,046 | 21,467 | 21,896 | 22,334 |
| GOLF SHOP | 15,284 | 14,300 | 14,515 | 14,805 | 15,101 | 15,403 | 15,711 | 16,025 | 16,346 | 16,673 | 17,006 |
| POOL | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **TOTAL OPERATING EXP.** | 267,662 | 219,649 | 222,944 | 227,403 | 231,951 | 236,590 | 241,322 | 246,148 | 251,071 | 256,093 | 261,215 |
| **CASH AVAIL FOR PLAN PYMTS (2)** | (24,878) | 631,443 | 717,119 | 1,089,291 | 1,156,750 | 1,246,691 | 1,369,355 | 1,480,661 | 1,591,661 | 1,702,348 | 1,812,716 |
| **Total Golf Members End of Year** | 136 | 190 | 230 | 265 | 290 | 315 | 340 | 365 | 390 | 415 | 440 |

(1) Includes actual results through March 31.
(2) These results do not include property taxes, capitalized equipment lease payments or any debt service payments.

# FAIRVUE AND FOXLAND CLUBS COMBINED
## 10 YEAR PROJECTIONS SUMMARY

| | 2010(1) | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Fairvue Revenue:** | | | | | | | | | | | |
| Initiation Fees | 212,250 | 261,550 | 468,100 | 332,200 | 228,700 | 220,600 | 220,600 | 220,600 | 220,600 | 220,600 | 220,600 |
| Golf Fees | 946,275 | 1,049,740 | 1,065,110 | 1,080,480 | 1,095,850 | 1,111,220 | 1,126,590 | 1,141,960 | 1,157,330 | 1,172,700 | 1,188,070 |
| Member Dues | 2,216,388 | 2,442,665 | 2,513,735 | 2,644,835 | 2,718,995 | 2,914,515 | 2,962,485 | 3,181,196 | 3,272,265 | 3,455,613 | 3,552,101 |
| Golf Shop Merchandise | 242,122 | 282,484 | 286,776 | 291,069 | 295,362 | 299,655 | 303,948 | 308,240 | 312,533 | 316,826 | 321,119 |
| Admin | 102,575 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 |
| Food and Beverage | 1,518,444 | 1,671,781 | 1,694,031 | 1,701,881 | 1,709,731 | 1,717,581 | 1,725,431 | 1,754,881 | 1,762,731 | 1,770,581 | 1,778,431 |
| Pool Revenue | 69,350 | 70,700 | 74,300 | 74,300 | 74,300 | 74,300 | 74,300 | 74,300 | 79,700 | 79,700 | 79,700 |
| **Total Revenue** | 5,307,404 | 5,898,920 | 6,222,053 | 6,244,766 | 6,242,938 | 6,457,871 | 6,533,354 | 6,801,178 | 6,925,159 | 7,136,021 | 7,260,021 |
| **FAIRVUE CASH FOR PLAN PYMTS** | 700,222 | 1,176,280 | 1,434,448 | 1,351,600 | 1,262,234 | 1,378,011 | 1,362,488 | 1,537,619 | 1,567,188 | 1,681,882 | 1,707,925 |
| **Foxland Revenue:** | | | | | | | | | | | |
| Initiation Fees | 38,500 | 276,500 | 132,000 | 276,000 | 174,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 |
| Golf Fees | 165,071 | 295,483 | 384,370 | 470,429 | 542,131 | 582,161 | 622,191 | 662,221 | 702,251 | 742,281 | 782,311 |
| Member Dues | 210,957 | 479,254 | 615,744 | 759,790 | 861,686 | 972,222 | 1,061,777 | 1,140,273 | 1,218,770 | 1,297,266 | 1,375,763 |
| Golf Shop Merchandise | 30,371 | 58,179 | 74,748 | 89,575 | 102,013 | 110,062 | 118,111 | 126,160 | 134,209 | 142,258 | 150,307 |
| Admin | 190,000 | 200,000 | 200,000 | 200,000 | 200,000 | 200,000 | 200,000 | 200,000 | 200,000 | 200,000 | 200,000 |
| Food and Beverage | 66,214 | 101,145 | 119,067 | 132,795 | 144,382 | 154,195 | 164,007 | 173,820 | 183,632 | 193,445 | 203,257 |
| Pool Revenue | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Total Revenue** | 701,113 | 1,410,560 | 1,525,929 | 1,928,588 | 2,024,212 | 2,138,640 | 2,286,086 | 2,422,474 | 2,558,862 | 2,695,250 | 2,831,638 |
| **FOXLAND CASH FOR PLAN PYMTS** | (24,878) | 631,443 | 717,119 | 1,089,291 | 1,156,750 | 1,246,691 | 1,369,355 | 1,480,661 | 1,591,661 | 1,702,348 | 1,812,716 |
| **COMBINED CASH FOR PLAN PYMTS** | 675,344 | 1,807,723 | 2,151,567 | 2,440,891 | 2,418,984 | 2,624,701 | 2,731,843 | 3,018,280 | 3,158,849 | 3,384,230 | 3,520,642 |
| **PLAN PAYMENTS:** | | | | | | | | | | | |
| Administrative Claims | 200,000 | | | | | | | | | | |
| Priority Tax Claims | 41,698 | 41,698 | 41,698 | 41,698 | 41,698 | | | | | | |
| **Priority Tax Claims -Property Taxes** | | | | | | | | | | | |
| **Fairvue:** | | | | | | | | | | | |
| 2008 City of Gallatin | 16,446 | 16,446 | 16,446 | 16,446 | 16,446 | | | | | | |
| 2008 Sumner County | 24,839 | 24,839 | 24,839 | 24,839 | 24,839 | | | | | | |
| 2009 City of Gallatin | 26,510 | 26,510 | 26,510 | 26,510 | 26,510 | | | | | | |
| 2009 Sumner County | 40,149 | 40,149 | 40,149 | 40,149 | 40,149 | | | | | | |
| Property Taxes 2010 and thereafter | 180,000 | 180,000 | 180,000 | 180,000 | 180,000 | 180,000 | 180,000 | 180,000 | 180,000 | 180,000 | 180,000 |
| **Foxland:** | | | | | | | | | | | |
| 2008 City of Gallatin | 18,850 | 18,850 | 18,850 | 18,850 | 18,850 | | | | | | |
| 2008 Sumner County | 28,471 | 28,471 | 28,471 | 28,471 | 28,471 | | | | | | |

# FAIRVUE AND FOXLAND CLUBS COMBINED

## 10 YEAR PROJECTIONS SUMMARY

| | 2010(1) | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2009 City of Gallatin | 17,923 | 17,923 | 17,923 | 17,923 | 17,923 | | | | | | |
| 2009 Summer County | 27,143 | 27,143 | 27,143 | 27,143 | 27,143 | | | | | | |
| Property Taxes 2010 and thereafter | | 122,000 | 122,000 | 122,000 | 122,000 | 122,000 | 122,000 | 122,000 | 122,000 | 122,000 | 122,000 |
| OPERATING RESERVE FUNDING | 100,000 | | | | | | | | | | |
| CAPEX FUNDING | 50,000 | 68,883 | 75,717 | 81,734 | 82,672 | 85,965 | 88,194 | 92,237 | 94,840 | 98,313 | 100,917 |
| Estimated payments under plan | 592,029 | 612,912 | 619,746 | 625,763 | 626,701 | 387,965 | 390,194 | 394,237 | 396,840 | 400,313 | 402,917 |
| Available for Payment on Secured Claims | 83,315 | 1,194,810 | 1,531,820 | 1,815,129 | 1,792,283 | 2,236,736 | 2,341,648 | 2,624,043 | 2,762,009 | 2,983,917 | 3,117,725 |